UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>RICHARD D. KEGLEY, RAMON ZAMORA, ZAP BOXING CLUB YOUTH CENTER, and WALLA WALLA COUNTY,<br><br>  Defendants. | No.   CV-13-5053-EFS<br><br>**ORDER GRANTING SUMMARY JUDGMENT IN THE UNITED STATES' FAVOR AS TO RICHARD KEGLEY[1]** |

  Plaintiff United States asks the Court to enter either summary judgment or default judgment against Plaintiff Richard Kegley. ECF No. 69. On October 28, 2015, Mr. Kegley filed an opposition. ECF Nos. 79 & 80, and approximately a month later Mr. Kegley filed a document entitled, "Notice of Discharge," ECF No. 84. After reviewing the record and relevant authority, the Court is fully informed and enters judgment against Mr. Kegley for the reasons that follow.

---

[1] In prior Orders, the Court utilized a larger font size. Given that Mr. Kegley utilized a standard-size font in his recent filings, the Court reverts to a standard-size font.

ORDER - 1

**A.    Evidence Challenges and the Summary-Judgment Standard**

Mr. Kegley attacks the sufficiency of the declarations submitted by the United States. Both IRS Revenue Officers William Waight and Ron W. Robinson signed their declarations under penalty of perjury pursuant to 28 U.S.C. § 1746. ECF No. 72 at 3; ECF No. 73 at 7. These declarations comply with the requirements of § 1746 and therefore may be considered by the Court for purposes of summary judgment. *See, e.g., Davenport v. Bd. of Trustees of St. Ctr. Cmty. College Dist.*, 654 F. Supp. 2d 1073, 1084-85 (E.D. Cal. 2009) (discussing that for purposes of § 1746 the declarant must have personal knowledge of the facts and also indicate that the information provided is truthful). Furthermore, Ron W. Robinson is the IRS Revenue Officer's legal name and it is not a pseudonym as an employee of the IRS, as suggested by Mr. Kegley. Robinson Dec. ¶ 2, ECF No. 82.

Mr. Kegley also challenges the Court's reliance on IRS Forms 4340, Certificate of Assessments, Payments and Other Specified Matters. *See* ECF No. 73, Exs. 1-9. Yet, Mr. Kegley did not support this challenge with evidence to rebut the fact that notices and demands for these unpaid liabilities were sent to him on the specified dates for the specified amounts. Therefore, the Court finds it may rely on the IRS Forms 4340 to establish that the IRS provided Mr. Kegley with notice of unpaid tax and penalty assessments and demand for payment as is required under 26 U.S.C.

§ 6303(a). *See Palmer v. IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997) (finding that taxpayers failed to provide specific facts to challenge the Form 4340 that was mailed to them by the IRS and therefore affirmed the district court's grant of summary judgment in the United States' favor); *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) (finding that IRS's submitted Form 4340, an official document, was proof of the tax assessments).

Having denied Mr. Kegley's unsupported challenges to the United States' submitted evidence, the Court relies on the United States' evidence to develop the following factual statement. To the extent that Mr. Kegley's declaration provides facts, the Court also considers these facts. Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Mr. Kegley, as the party opposing summary judgment, must point to specific facts establishing a genuine dispute of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the non-moving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary-judgment motion. *Celotex Corp.*, 477 U.S. at 322.

///

ORDER – **3**

**B.    Factual Statement**

Mr. Kegley lives in Walla Walla County, Washington. From 1997 to the present, Mr. Kegley failed to file federal income tax returns. As a result, on February 13, 2006, the Secretary of the Treasury made federal income tax assessments against Mr. Kegley, which are reflected in the table below along with the penalties and interest assessed as of September 1, 2015:

| Tax Year | Tax Assessed | Penalties & Interest Assessed | Balance (as of 9/1/15) |
|---|---|---|---|
| 1997 | $2,976.00 | $4,061.54 | $10,987.58 |
| 1998 | $28,981.00 | $34,871.82 | $98,559.35 |
| 1999 | $14,852.00 | $15,717.37 | $47,185.02 |
| 2000 | $28,062.00 | $25,466.09 | $82,622.71 |
| 2001 | $45,505.00 | $33,979.72 | $124,735.51 |
| 2002 | $68,295.00 | $40,756.58 | $175,499.44 |
| 2003 | $23,271.00 | $10,868.12 | $56,680.62 |
| 2004 | $22,077.00 | $7,651.87 | $46,818.66 |
| **TOTAL** | $234,019.00 | $173,373.11 | $643,088.89 |

Mr. Kegley was given notice of each of the assessments. The Secretary of the Treasury made a demand for payment of each assessment.

Mr. Kegley failed to pay the assessed amounts. On July 11, 2005, a delegate of the Secretary of the Treasury assessed penalties against Mr. Kegley in the amount of $166,641 under Internal Revenue Code (IRC) § 6700 because Mr. Kegley established

corporation soles in Washington in order to serve as an abusive tax shelter. Mr. Kegley was given notice of this assessed penalty, and failed to pay the demanded assessment. On later review, the United States, determined that the penalty assessment should be less than $166,641, and instead demands IRC § 6700 penalties in the amount of $49,000, plus interest (totaling $78,672.39 as of September 1, 2015).

On August 1, 1975, Mr. Kegley and Carolyn Kegley acquired property located in Walla Walla County, Washington at 2344 Old Milton Highway ("the Property"), legally described as:

> Beginning at a point in the South line of the Northeast Quarter of the Southeast Quarter of Section 2 in Township 6 North of Range 35, East of the Willamette Meridian, which point is 5.74 feet, measured along said South line from the center of the Southeast Quarter of said Section and running thence East, along said South line 100.0 feet; thence North 668.22 feet, more or less, to the North line of the Southwest Quarter of the Northeast Quarter of the Southeast Quarter of said Section; thence West along said North line, 100.0 feet; thence South 668.22 feet, more or less, to the point of beginning. Subject to existing road on the South. Situate in the County of Walla Walla, State of Washington.

Mr. Kegley resided on the Property from 1975 to at least November 2008. Carolyn Kegley transferred her interests in the Property to Mr. Kegley by quitclaim deed on January 11, 1993, as part of marriage dissolution. Also in January 1993, Mr. Kegley purported to transfer the Property by quitclaim deed to his father, Richard J. Kegley ("Sr. Kegley"), and Jack Whittington.[2] In August 1993,

---

[2] Both Sr. Kegley and Mr. Whittington are now deceased.

ORDER - 5

Sr. Kegley and Mr. Whittington transferred the Property by quitclaim deed as a "gift" to Sr. Kegley and Jamie Whittington, who resided with Mr. Kegley as a couple at that time.

In July 1997, Sr. Kegley and Ms. Whittington purported to transfer the Property by quitclaim deed to Richard of YHVH, Office of the First Presiding Pratriarch [sic] (Overseer), a corporation sole and Jamie of YHVH, Office of the First Presiding Patriarch (Overseer), a corporation sole. Mr. Kegley is Richard of YHVH; and Jamie Whittington established Jamie of YHVH with Mr. Kegley. In November 1999, Jamie Marie Kegley (Overseer) (a/k/a Jamie Whittington) for Jamie of YHVH purported to transfer its interest in the Property as recorded by quitclaim deed as a "gift/donation" to Richard of YHVH, Office of the First Presiding Patriarch (Overseer), a corporation sole.

On April 9, 2008, Revenue Officer William Waight spoke with Jamie Whittington by telephone, who advised that she and Mr. Kegley lived together as a couple and that they both established Jamie of YHVH, Office of the First Presiding Patriarch. On May 7, 2008, Revenue Officer Waight visited the Property and observed that it was occupied. Mr. Kegley came out of the house and introduced himself. Officer Waight discussed Mr. Kegley's outstanding federal tax liabilities with him. Mr. Kegley told Mr. Waight that he established the corporation sole Richard of YHVH

and that he transferred assets to that entity, which was in fact Mr. Kegley.

In November 2008, Officer Waight visited the Property again in order to leave IRS summonses for Mr. Kegley; no one answered the door. Officer Waight observed the same cars and dogs that were present during his May 2008 visit. Officer Waight returned to the Property the next day and found the summonses that he had taped to the door were gone.

In the spring of 2009, Erin Capital Management recorded a judgment lien against Jamie Whittington and the Whittington marital community concerning the Property. In November 2009, Richard of YHVH, Office of the First Presiding Patriarch (Overseer), a corporation sole, and Jamie of YHVH, Office of the First Presiding Patriarch (Overseer), a corporation sole, purported to transfer their interests in the Property by quitclaim deed as a "gift" to Zap Boxing Club Youth Center.

In December 2009, Jamie Whittington died.

In September 2010, Officer Waight returned to the property. It appeared to Officer Waight that the property had been abandoned as the dogs and cars he had seen on the prior trips were gone.

On May 1, 2013, the United States filed this lawsuit. The United States served Mr. Kegley with a number of discovery requests, which Mr. Kegley failed to fully answer. ECF Nos. 71, Exs. 1-3. Defendants Ramon Zamora and Zap Boxing Youth Center

disclaimed any right, title, or interest in and to the Property. ECF No. 5. And the Court has entered orders of default against Defendant Erin Capital Management and Defendants Richard of YHVH, Office of the First Presiding Patriarch, and Jamie of YHVH, office of the First Presiding Patriarch, holding that any interest each entity had in the Property is extinguished. ECF Nos. 39, 52, & 53. Further, the United States and Walla Walla County have stipulated that the County's lien interests are paramount and superior to the United States federal tax liens. ECF No. 35.

After extending a number of discovery deadlines due to Mr. Kegley's pro se status and his vision difficulties, the discovery cutoff expired. On September 30, 2015, the United States filed the instant motion for summary-judgment.[3]

## C.  Authority and Analysis

Mr. Kegley raises a number of challenges to the United States' motion, which can be summarized into three categories: 1) summary judgment is not appropriate because the United States failed to provide Mr. Kegley with proper notice as to his statutory duty to owe taxes and therefore he has no duty to pay the claimed

---

[3] In the alternative, the United States seeks default judgment. Because the Court finds summary judgment is appropriate, the Court declines to consider whether default judgment is appropriate against Mr. Kegley.

taxes, 2) the United States cannot demand payment of money for the taxes because the United States money system violates the U.S. Constitution, and 3) the transfers of the Property and development of corporations sole were not sham transactions. The Court addresses each challenge.

First, as to notice, the Court finds Mr. Kegley has been provided proper and sufficient notice regarding his tax liability to the United States. Mr. Kegley satisfies the definition of "person" under the Internal Revenue Code, 26 U.S.C. §§ 1 *et al.* *See* ECF No. 23 at 3. *See, e.g.,* 26 U.S.C. §§ 6671(b), 7203, & 7701. *See also United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986) (recognizing that the argument that an individual is not a taxpayer under the Internal Revenue Code is frivolous); *United States v. Romero*, 640 F.2d 1014, 1016 (9th Cir. 1981) ("Romero's proclaimed belief that he was not a 'person' and that the wages he earned as a carpenter were not 'income' is fatuous as well as obviously incorrect."). Further, Mr. Kegley was provided notice of his owed income tax as a taxpayer and the imposed interest and penalties because of his failure to pay the owed taxes. *See* 26 U.S.C. § 6671(a) ("The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes."). And as reflected in the filed Form 4340s, Mr. Kegley owes the listed taxes and penalties. Although

Mr. Kegley could have challenged these owed taxes with the IRS—he did not do so. And he did not do so during this lawsuit either through responses to discovery requests or in response to this summary-judgment motion. Accordingly, Mr. Kegley failed to establish a triable issue of fact that these tax assessments are erroneous. *See, e.g., Schiff v. United States*, 919 F.2d 830, 831-12 (2d Cir. 1990) (denying the "taxpayer" petitioner's due process claim as frivolous). In summary, the Court denies Mr. Kegley's first challenge, finding that this lawsuit was properly brought after the required United States' pre-lawsuit action. *See* 26 U.S.C. § 7401 ("No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.").

The second challenge that Mr. Kegley raises against the United States' summary-judgment motion is based on the legal argument that the United States cannot demand payment of the owed taxes in the form of United States legal tender because the United States legal-tender system unconstitutionally requires the use of coins and currency, rather than gold or silver coins. *See* Mr. Kegley's Opp. to Mtn. for Summ. Jdgmt. or Def. Jdgmt., ECF No. 79 at 3 (Mr. Kegley "is still waiting for the Government to define the exact nature of the accounting unit their claim is based upon,

the authority for the use of said accounting unit and the statutory requirement which places a duty upon Mr. Kegley to conduct his financial affairs in the accounting unit."). This unconstitutional-legal-tender argument is frivolous. *See United States v. Gardiner*, 531 F.2d 953, 955 (9th Cir. 1976) (recognizing that arguments that Federal Reserve Notes are not lawful money are frivolous). Congress has the constitutional power to oversee the monetary system of the country, and it exercised that power by establishing a uniform currency system. *See* 31 U.S.C. §§ 5101 *et seq.; Norman v. Baltimore & O.R. Co.*, 55 S.Ct. 407 (1935). Accordingly, "United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues." 31 U.S.C. § 5103. Mr. Kegley's belief that he can pay this owed debt in gold or silver coins, or some other form of payment, other than United States legal tender is erroneous. In addition, his "Offer of Performance" to pay "up to 850,000 money of account units," and which states in part, "As soon as the unit 'money' is defined and comes into general circulation and the use or possession of the unit does not prejudice my legal rights in any manner I will fulfill this offer," ECF No. 80-1, is not a bona fide offer of judgment under Rule 68. Accordingly the Court rejects Mr. Kegley's second challenge and finds that Mr. Kegley owes $583,045.24 in unpaid federal income taxes from 1997-

2004. Mr. Kegley also owes interest and penalties accruing after January 31, 2013, until paid. In this regard, the United States motion is granted.

Mr. Kegley's third challenge pertains to Count 2, wherein the United States alleges that Mr. Kegley marketed a program to develop corporations sole in order to evade the reporting and payment of federal incomes taxes, as well as conceal assets and evade IRS collection efforts. Although a corporation sole is lawful under some state laws to enable religious leaders to hold property and conduct business for the benefit of the religious entity, a corporation sole is not authorized to provide a benefit to the office holder or entity creator. *See, e.g., United States v. Gardner*, 2008 WL 906696, *3 (D. Ariz. Mar. 21, 2008), *aff'd* 457 Fed. Appx. 611 (9th Cir. Nov. 1, 2011) (affirming entry of permanent injunction against promoters of abusive corporation sole tax scheme).

The United States provided a chart of the corporation soles that were formed in Washington in Walla Walla and neighboring College Place by Mr. Kegley. ECF No. 73, Ex. 10. These 49 corporation soles were included as the basis for the penalty assessment in the amount of $166,641, against Mr. Kegley, under 26 U.S.C. § 6700. *See id.*, Ex. 9. Section 6700 permits the IRS to impose a penalty against an individual, who participates in an arrangement and makes a statement in connection therewith with

respect to the allowability of a deduction or credit, the excludability of any income, or the securing of any tax benefit as a result of participating in the arrangement, with knowledge (or having reason to know) that this statement is false or fraudulent as to any material matter. 26 U.S.C. § 6700(a)(2).

In support of Count 2, Officer Waight declares that on May 7, 2008, he traveled to the Property and spoke with Mr. Kegley, who admitted that he established the corporation sole Richard of YHVH and that he transferred assets to that entity. ECF No. 72 ¶ 4. In his opposition brief, which is not signed under the penalty of perjury, Mr. Kegley submits that he did not admit to Officer Waight that he established Richard YHVH and transferred assets to that entity. ECF No. 79 at 6. In comparison, in his declaration, which is signed under penalty of perjury, Mr. Kegley does not make a similar assertion, i.e., he did not state under penalty of perjury that he did not make these admissions to Officer Waight. Accordingly, Mr. Kegley failed to present admissible evidence to challenge Officer Waight's testimony that Mr. Kegley admitted that he established the corporation sole Richard of YHVH and that he transferred assets to that corporation sole.

Therefore, based on the entire record, including 1) Mr. Kegley's admission to Officer Waight, 2) the timing of the Property transfers in comparison to Mr. Kegley's owed taxes, 3) the chart of the formed corporations sole, and 4) the uncontested

May 18, 2011 Form 4340, which imposed a civil penalty for these abusive tax shelters, the Court grants summary judgment in the United States' favor as to Count 2. The United States' request to reduce to judgment $49,000 of the penalty assessed against Mr. Kegley under 26 U.S.C. § 6700, plus statutory additions and interest accruing on that amount since July 11, 2005, until paid is granted.

Furthermore, when the Court sets aside the sham transfers of the Property, the Property is deemed owned by Mr. Kegley. Therefore, pursuant to § 6321, Mr. Kegley's failure to pay the owed taxes, interest, and penalties, subjects the Property to a lien in favor of the United States. 26 U.S.C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."); *see also id.* § 6322 (setting the date of the lien as the date the assessment was made). Accordingly, the Court grants the United States' summary judgment as to Count 3.

///

//

/

ORDER - 14

**D.    Conclusion**

For the reasons set-forth above, **IT IS HEREBY ORDERED**:

1.    The United States' Motion for Summary Judgment and, in the Alternative, Default Judgment against Richard Kegley, **ECF No. 69**, is **GRANTED**.

2.    No later than **10:00 a.m. on January 6, 2016**, the United States is to submit a proposed judgment, including the identified financial amounts for the following matters:[4]

    a.    For unpaid federal income taxes from 1997 to 2004, plus statutory additions and interest for each tax assessment;

    b.    For an unpaid civil penalty assessed under 26 U.S.C. § 6700 in the amount of $49,000, plus statutory additions and interest; and

    c.    The federal tax liens attach to all property and rights to property of Richard D. Kegley, including the subject Property.

3.    All Scheduling Order, **ECF No. 57**, dates and deadlines are **STRICKEN**.

4.    The federal tax liens are to be foreclosed on the Property. Within **twenty days** after entry of Judgment,

---

[4] Calculations are to presume that judgment will be entered on January 6, 2016.

ORDER – 15

the United States is to file a proposed order of sale of the subject Property, consistent with the stipulations, disclaimers, and prior court orders.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to counsel and Mr. Kegley.

**DATED** this __29th__ day of December 2015.


_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2013\5053.msj.1c1.docx

ORDER - 16